Fullerton agt. National Burglar and Thief Insurance Co.

## SUPREME COURT.

WILLIAM FULLERTON and others agt. THE NATIONAL BURGLAR AND THEFT INSURANCE COMPANY OF THE CITY OF NEW YORK, WILLIAM H. RITTER and THE FARMERS' LOAN AND TRUST COMPANY.

*Insurance company — Trust for the security of policyholders — What is sufficient to establish one — After such trust has been created title passes to trustee — Creator of such trust no power to revoke same.*

The insurance company, defendant, in October, 1877, transferred to the trust company, defendant, two mortgages as security to the holders of policies in the insurance company, the latter company to collect and retain for its own use the interest upon the mortgages. The trust company was, at the request of the insurance company, to foreclose the mortgages in its own name, on being indemnified for costs and expenses, and to hold the proceeds for the protection of the policyholders. In September, 1878, the insurance company made an assignment for the benefit of creditors, and at the request of the assignee the mortgages were delivered to plaintiffs for foreclosure, as attorneys of the trust company, the plaintiffs giving a receipt stating that the proceeds, after deducting the interest which had accrued upon the securities, and the costs and expenses, were to be deposited with the trust company as security for the holders of the policies. There was $13,800 of interest due upon one of the mortgages at the time of the foreclosure, and $1,200 upon the other, while the foreclosure sale produced but $5,000 upon one mortgage and $1,000 upon the other. In this action to determine whether this $6,000, less expenses, should be paid to the assignee or to the trust company, and whether the plaintiffs have a lien for services to the assignee :

*Held,* that, as against the trust company, whose attorneys they are, the plaintiffs are not entitled to hold possession of the fund, after receiving their taxable costs and allowances ; and also that, as the agreement under which the trust company received the mortgages created a trust, by which the policyholders of the insurance company were to be secured, the securities and their proceeds became irrevocably impressed with that trust, and the trust company is, therefore, entitled to such proceeds as against the assignee of the insurance company, and this notwithstanding the provision in regard to the receipt and collection of interest by the insurance company.

*Special Term, March, 1882.*

LAWRENCE, *J.* — On the 26th day of October, 1877, the defendant, The National Burglar and Theft Insurance Company of the City of New York, entered into two agreements with the defendants, The Farmers' Loan and Trust Company, which are identical in their recitals and form, save and except as to the securities in the agreements respectively referred to. Said agreements recited that whereas, " The National Burglar and Theft Insurance Company of the City of New York is desirous of depositing securities with the Farmers' Loan and Trust Company of said city, as a security to the holders of policies in said first named company, and whereas the Farmers' Loan and Trust Company is willing to become the custodian and holder of said securities for said purpose, now, therefore, this indenture witnesseth that said, The National Burglar and Theft Insurance Company of the City of New York, hereby assigns, transfers and deposits to and with said Farmers' Loan and Trust Company for the purpose aforesaid, a certain indenture of mortgage, executed," &c.

Then follows in each agreement an enumeration of the securities thereby assigned. Each of said instruments contained a provision that the assignment and deposit were made upon the terms and conditions — first, that the trust company should hold and retain the bond and mortgage therein referred to as a security for the holders of policies in the National Burglar and Theft Insurance Company until the latter company shall make a deposit, for a like purpose, with the insurance department of the State of New York, in pursuance of any legislation which may be hereafter had for that purpose, or until said latter company ceases to do business as hereinafter provided ; second, that said National Burglar and Theft Insurance Company of the city of New York reserves the right to collect and receive any and all interest which may become due and owing upon the principal sum named in said mortgage, and to retain such interest, when received, for its own use. It is also provided that if, at any time while said mortgage is held by the trust company under the assignment,

the National Burglar and Theft Insurance Company shall request a foreclosure of the same, then the trust company will permit such foreclosure in its name, on being indemnified by the latter company against the costs and expenses of such foreclosure, and that in the event that any part of the principal of said mortgage is paid or collected, then said Farmers' Loan and Trust Company is to hold the proceeds of such payment or collection for the purposes herein mentioned, and under the terms and conditions of this indenture. Provision is also made in each of the agreements that if, at any time hereafter, the National Burglar, &c., Company should require the bond and mortgage assigned, or the proceeds of the payment or collection of the same, or of any part thereof, for the purpose of making a special deposit with the superintendent of the insurance department as security to the holders of policies in said company, or shall at any time present to the trust company a certificate from the superintendent that it has deposited with him other securities for the protection of said policyholders, then, and in either case, that the trust company shall reassign the bond or mortgage, or any security or securities substituted therefor, to the National Burglar, &c., Company.

It is further provided by the agreements that the National Burglar, &c., Company reserves the right to substitute other securities in the place of those assigned; and in case of that event the trust company is to reassign and redeliver the bond and mortgage to the National, &c., Company. And it is further provided, that if at any time while the trust company holds the bond and mortgage referred to in the agreements, or any security substituted therefor, the National Burglar, &c., Company shall cease to do business, and shall settle and discharge all its obligations to the holders of policies therein, then and in that event the trust company is to reassign said bond and mortgage, &c., to the National, &c., Company.

It appears from the evidence in this case that on the 5th day of September, 1878, the National Burglar, &c., Company exe-

cuted and delivered to the defendant Ritter an assignment of all its property and effects in trust for the benefit of its creditors; that said assignment was duly recorded, and that the assignee duly gave the security required of him and entered upon the execution of his trust; also, that on or about the 15th of November, 1878, said Ritter addressed to the trust company the following letter:

> "New York City, *November* 15, 1878.
>
> "*To the* Farmers' Loan and Trust Company, 26 *Exchange Place, N. Y. City:*
>
> "You are hereby requested to deliver to Messrs. Fullerton, Knox & Crosby, counselors-at-law, 120 Broadway, New York city, the various bonds and mortgages heretofore assigned to you by the National Burglar and Theft Insurance Company of the city of New York for the purpose of having the same foreclosed in accordance with the terms of the various assignments of the said bonds and mortgages heretofore executed by the National Burglar and Theft Insurance Company of the city of New York to the Farmers' Loan and Trust Company.
>
> "WILLIAM H. RITTER,
> "*Assignee of the National Burglar and Theft*
> *Insurance Company of the City of New York.*"

Also, that on the said fifteenth day of November the trust company delivered the bonds and mortgages, which are the subject of this controversy, to the plaintiffs and took from said plaintiffs a receipt which, after enumerating the several securities received by the plaintiffs from the trust company, recited that "said mortgages, bonds and assignments and abstracts hereinbefore mentioned being received by us for the purpose of foreclosing the mortgages hereinbefore mentioned as the attorneys of said The Farmers' Loan and Trust Company, but said foreclosure to take place without cost or expense to said The Farmers' Loan and Trust Company, the proceeds of said foreclosure, after deducting therefrom the interest

which has accrued on said bonds and mortgages and the proper and legal costs, charges and expenses of conducting said foreclosure, to be deposited in the Farmers' Loan and Trust Company as a security for the holders of the policies in said The National Burglar and Theft Insurance Company of the city of New York. In case the National Burglar and Theft Insurance Company of the city of New York shall settle and discharge all its obligations to the holders of policies therein, or in case the said The National Burglar and Theft Insurance company of the city of New York, or its assignee or legal representatives, shall procure to be surrendered and canceled said outstanding policies, the said The Farmers' Loan and Trust Company is to reassign the bonds and mortgages hereinbefore mentioned to William H. Ritter, the general assignee of the said The National Burglar and Theft Insurance Company of the city of New York, and is to pay over to said Ritter, or to his order, any amount which may have been deposited under the terms of this receipt with the said The Farmers' Loan and Trust Company, after first deducting therefrom the proper charges and expenses of the said The Farmers' Loan and Trust Company which may be due to it in the execution of the trust created by the various assignments hereinbefore mentioned, which shall then be due, owing and unpaid to the said The Farmers' Loan and Trust Company."

After the delivery of the securities to the plaintiff actions for the foreclosure of the two mortgages mentioned in the agreements, to which I have referred, were instituted by the plaintiffs in the name of the Farmers' Loan and Trust Company, which resulted in judgments of foreclosure and sale on or about the 5th of July, 1879. It was admitted that at the time of such sale there was due upon one of the mortgages for unpaid interest the sum of $13,800, and upon the other of said mortgages the sum of $1,200. And it appeared upon the trial of this action that upon the sale the property covered by the first mortgage produced only the sum of

$5,000, and the property covered by the second mortgage the sum of $1,000.

In each of the judgments for foreclosure it was provided that the referee under whose direction the sale was ordered to take place should pay " to the plaintiffs herein, after deducting the costs and charges to be paid, the amount so reported due as aforesaid, together with the legal interest thereon from the date of the said report, or so much thereof as the purchase money for the mortgaged premises will pay of the same and take a receipt therefor, and together with his report of sale deposit it with the clerk of the court."

The plaintiffs bring this action alleging that the proceeds of the sales of said mortgaged premises were paid over by the referee who had conducted the sale to the plaintiffs and that the same have never been paid over to the defendants, and the plaintiffs allege that a question has arisen as to which of the defendants is entitled to have and receive from the plaintiffs said proceeds; that the defendants respectively claim to be entitled to the same, and demand from the plaintiffs that they shall pay over any balance remaining after making all proper deductions therefrom. The plaintiffs also allege that they are ready and willing to pay any balance which may remain after making all proper deductions therefrom to such of the defendants as may be properly entitled to the same. They allege that they are entitled to deduct certain costs and disbursements incurred in the action for foreclosure, and a reasonable sum as compensation for their services in addition thereto. They also allege that they rendered certain services to the insurance company and to the assignee, the defendant Ritter. The plaintiffs pray that it may be adjudged which of the defendants is entitled to receive from the plaintiff such proceeds after making such deductions, and that if it be adjudged and determined that either of the defendants, the National Burglar and Theft Insurance Company or William H. Ritter, is entitled to such proceeds, then that the plaintiffs may have an accounting, &c. They also pray for further relief.

So far as the questions presented by this case arise between the plaintiffs and the defendant, The Farmers' Loan and Trust Company, I have no difficulty in holding that the Farmers' Loan and Trust Company are entitled to the proceeds arising from the sales made under the judgments in foreclosure, and for this reason : The plaintiffs, in the actions brought for such foreclosure, acted as attorneys for the Farmers' Loan and Trust Company, and entered the judgments in those actions, and, under the judgments, it seems to me that, as such attorneys, as against the. Farmers' Loan and Trust Company, the plaintiffs were not entitled to take or hold possession of the fund after their taxable costs and the allowances which were granted by the judgments had been paid to them by the referee. In other words, I do not think that the plaintiffs, as such attorneys, stood in any such relation toward the general assignee of the National Burglar, &c., Company, or said company, as permitted them, as to the fund realized by the sales on foreclosure, to divest themselves of the duty imposed on them as the attorneys for the plaintiffs in those actions.

It is true that the plaintiffs were selected as the attorneys for the Farmers' Loan and Trust Company by Mr. Ritter as such assignee, but Ritter had by virue of his assignment no greater rights in respect to the foreclosure of said mortgages than the National Burglar and Theft Insurance Company, and under the terms of the agreements between the two companies, the name of the trust company was to be used as plaintiffs on the latter being indemnified against the costs and expenses of foreclosure.

Furthermore, the plaintiffs expressly recognized the fact that they were to act as attorneys of the Farmers' Loan and Trust Company in the receipt which they gave upon the delivery of the bonds and mortgages to them. They cannot, in my opinion, therefore, now claim to stand, in respect to the fund which arose from the foreclosure sales in any other attitude than that of attorneys for the trust company.

A more serious question is presented under the agree-

ments — as to the rights of Ritter as assignee and the defendants, The Farmers' Loan and Trust Company — but, after as careful a consideration as I have been able to give to the terms of the agreement, I have come to the conclusion that under the peculiar circumstances of the case the defendants, The Farmers' Loan and Trust Company, are entitled to the proceeds realized by the sales on foreclosure. The agreements in question are to be construed, I think, according to the intent of the parties as derived, not from any one particular paragraph or sentence, but from the whole scope and tenor of the agreements.

What was the object of those agreements? Plainly to create a trust, by which the policyholders of the National Burglar and Theft Insurance Company were to be secured, and that trust was to be effected by depositing the securities with the Farmers' Loan and Trust Company. When, therefore, the agreements were executed and the securities delivered to and accepted by the Farmers' Loan and Trust Company, they became impressed with that trust (*See Watts* agt. *Shipman*, 21 *Hun*, 598; *In the Matter of Le Blanc*, 14 *Hun*, 8). And after that trust had been created the title passed to the trustee, and it was not within the power of the National Burglar and Theft Insurance Company to revoke the same, even although the policyholders had not been informed of the creation of the trust (*See Martin* agt. *Funk*, 75 *N. Y.*, 134; *Matter of Le Blanc, supra ; Watts* agt. *Shipman, supra, and cases cited*). In arriving at this conclusion I am well aware of the ordinary rule, that where a payment is made or a sum realized, either voluntarily or by judicial proceedings, upon a debt bearing interest, the law applies that payment, or the sum so realized, first to the interest and afterward to the principal.

Nor do I lose sight of the fact that in this case, under the agreement, the National Burglar and Theft Insurance Company reserves the right to collect and receive any and all interest which may become due and owing upon the principal

sum named in said mortgage, and retain such interest when received for its own use. Nor of the further fact that the agreements provided that, in the event that any part of the principal of said mortgage is paid or collected, then the said Farmers' Loan and Trust Company is to hold the proceeds of such payment or collection for the purposes herein mentioned, &c.

Both of these provisions are, as I think, to be read in connection with the general declaration contained in the agreements that the bonds and mortgages therein referred to are deposited as a security to the policyholders. The provision in regard to the receipt and collection of interest by the National Burglar and Theft Insurance Company refers, I think, to the collection of interest which may become due and be collected and received by them before proceedings are instituted for foreclosure, and that if foreclosure becomes necessary, and the premises do not, as was the fact in this case, realize sufficient to pay either the interest or principal, then that in equity the policyholders should not be deemed to be postponed to the general creditors of the company creating the trust. To hold otherwise would be to hold that policyholders, who have justly relied upon securities set apart and deposited for their particular and special benefit, should be regarded with less favor in a court of justice than the company itself which created the trust. And that the company, which was only entitled to the interest, which was at most a mere incident to the principal secured by the bonds and mortgages, stands in a better position than its policyholders, who have taken their policies on the faith of the security afforded to them by the deposit made with the Farmers' Loan and Trust Company. To such a doctrine I cannot give my consent. I think that equity not only sanctions, but demands that the agreements should receive the construction which I have given to them.

With reference to the receipt which was delivered to the Farmers' Loan and Trust Company by the plaintiffs, I deem

it sufficient to say that, under the explanation given of the circumstances under which it was executed, it ought not to alter the relations of the parties.

Furthermore, if my construction of the agreements in question is correct, it was not within the power of the Farmers' Loan and Trust Company to alter the force and effect of the trust under which they were acting by any receipt which they may have accepted from the plaintiff.

On the whole case I am of the opinion that the defendant, The Farmers' Loan and Trust Company, is entitled to recover from the plaintiff the amounts respectively realized on the foreclosure sales, less the amount of the costs and allowances awarded by the judgments under which sales took place. Although all the parties to this action have submitted their proposed findings, I shall not settle them until I have the exact amount of the costs and allowances granted to the plaintiffs in the judgment for foreclosure.